**⌐ | LOCKS** LAW FIRM

801 North Kings Highway
Cherry Hill, NJ 08034
T 856.663.8200
T 866.LOCKSLAW
F 856.661.8400
Lockslaw.com

Gene Locks
Mike B. Leh
Jennifer L. Emmons††
Alfred M. Anthony
Steve M. Tatonetti ††
Andrew J. Dupont
Victoria A. Schall ††
Eric D. Bihlear
Alexandra B. Knoth
Sharice C. Wallace
Jonathan W. Miller

††Certified BY THE SUPREME
COURT OF NJ AS A CIVIL TRIAL
ATTORNEY



May 4, 2023

*Via CM/ECF*
The Honorable Zahid N. Quraishi
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse, 402 East State Street
Trenton, New Jersey 08608

> **Re:    Jane Doe (P.B.) v. Wyndham Hotels & Resorts, Inc. et al.**
> **Case No. 3:23-cv-01493-ZNQ-RLS (D.N.J.)**

Dear Judge Quraishi:

Plaintiff Jane Doe (P.B.) opposes Wyndham Hotel & Resorts Inc. ("Wyndham") and Ramada Worldwide Inc.'s ("Ramada") (collectively "Ramada Defendants") request for leave to file a motion to dismiss. The Ramada Defendants responsive pleading was due on March 17, 2023.  The proposed untimely motion would be a make-work exercise for the parties and the Court. Ramada Defendants strain to find any reason to delay answering the Complaint, which makes straightforward allegations. Their request should be denied so this case can move forward.

**Background**
Starting in 2015, traffickers coerced P.B. to engage in commercial sex acts. (ECF No. 1 at ¶ 22). These traffickers repeatedly chose the Ramada Inn located in Toms River, New Jersey, a hotel that that Ramada Defendants jointly controlled as part of the Ramada franchise system, as the venue for P.B.'s exploitation. (*Id.* at ¶¶ 23, 51-58). The affirmative acts and omissions of Ramada Defendants caused the Toms River Ramada Inn to become a venue-of-choice for traffickers, including P.B.'s traffickers, who knew that the staff consistently and actively turned a blind eye to the trafficking conduct. (*Id.* at ¶¶ 22, 37-50, 64-65).  Had Ramada Defendants acted reasonably and lawfully, they would have stopped use of their hotel for sex trafficking. Instead, they chose to earn benefits from the proceeds of unlawful trafficking conduct. Thus, P.B. sues Ramada Defendants under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581. Since 2003, the TVPRA has provided a civil remedy against perpetrators of criminal sex trafficking. In 2008, to extend accountability beyond just the sex buyer and seller, Congress created "beneficiary" liability for defendants who benefit from negligently facilitating criminal trafficking. *See* 18 U.S.C. § 1595(a).  A defendant is liable as a beneficiary if the defendant: (1) knowingly benefited; (2) from participation in a venture; and (3) that defendant knew or should have known engaged in a violation of the TVPRA's criminal liability provisions. *Id.* P.B. plausibly pleads that Ramada Defendants are liable as beneficiaries under both direct and vicarious theories.

**Direct Liability**
*Knowing Financial Benefit*: P.B. alleges that Ramada Defendants each experienced a benefit, including additional royalties paid by franchisees, by renting rooms to sex traffickers, including P.B.'s traffickers. This is sufficient to allege the "knowing benefit" element. *See M.A. v. Wyndham Hotels & Resorts*, Inc., 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019).

May 4, 2023
Page 2
_____

*Actual or Constructive Knowledge***:** Ramada Defendants argue that a § 1595(a) plaintiff must allege that defendant knew about a sex trafficking violation as to that specific plaintiff. This victim-specific knowledge standard finds no support in § 1595(a)'s plain text. A beneficiary claim requires that the defendant "knew or should have known" that a venture "engaged in an act in violation of this chapter." Nowhere does this language require knowledge of the specific victim of any such violation. Ramada Defendants' interpretation would disrupt years of congressional advancement in the fight against sex trafficking and go so far as to disrupt criminal human trafficking convictions where victim-specific knowledge is not required. In addition, a victim-specific knowledge requirement would severely curtail beneficiary liability claims. If victim-specific knowledge is a requirement, companies that knowingly benefit from facilitating sex trafficking can immunize themselves from liability as long as they do not learn of a particular victim's sex trafficking. This would create an enormous loophole and encourage willful blindness by businesses, a result that cannot be squared with § 1595(a)'s broad remedial intent.

A plaintiff can plead a franchisor's constructive knowledge by alleging that (1) the franchisor had actual notice of sex trafficking at its hotels; (2) it failed to take adequate steps to train staff about how to detect sex trafficking and prevent its occurrence in their hotels; and (3) the plaintiff exhibited signs that should have alerted the hotel staff that sex trafficking was occurring. *See, e.g., A.W. v. Red Roof Inns, Inc.,* No. 2:21-cv-04934, 2022 U.S. Dist. LEXIS 227437, at *17 (S.D. Ohio 2022). P.B. satisfies this standard. She makes detailed allegations about the extent of Ramada Defendants' *actual* knowledge that their hotel properties were being used for sex trafficking. She alleges that Ramada Defendants retained control over training of hotel staff regarding sex trafficking and over drafting and implementing policies responsive to sex trafficking. Based on this retained control, Ramada Defendants had a legal duty to take reasonable steps to ensure hotel staff were prepared to detect and respond to obvious trafficking. However, P.B. alleges that, when she was present at the Toms River Ramada Inn, there were *numerous* signs that the hotel staff—if properly trained and guided by appropriate policies—should have recognized and responded to as indica of sex trafficking. Because of Ramada Defendants' ongoing and active facilitation of sex trafficking, the hotel staff did *not* respond appropriately and, instead, facilitated P.B.'s trafficking.

P.B. also plausibly alleges Ramada Defendants had knowledge or constructive knowledge based on their control over reporting of suspected trafficking. Ramada Defendants adopted policies that, on their face, required hotel staff to report any suspected trafficking to them. (*Id.* at ¶¶ 45, 49-50). Had Ramada Defendants acted with reasonable care to implement these policies, the hotel staff would have reported incidents of trafficking predating and during P.B.'s trafficking that would result in direct knowledge of the operation on a sex trafficking venture.

*Participation in a Venture***:**  Ramada Defendants argue that P.B. does not plead that they engaged in an "overt act" in support of a venture. However, §1595(a) does not require P.B. to plead this. An overt act is a requirement of criminal liability, and the very nature of a beneficiary claim is that it extends liability to those whose actions *do not* rise to the level of criminal trafficking. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d at 970. A venture is an association in fact, and a defendant who repeatedly rents rooms to those who the defendant should know are engaged in trafficking participates in a venture with those traffickers. *See, e.g., Id.*; *M.L. v. Craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166836, at *23 (W.D. Wash. 2020). P.B. satisfies this requirement by describing an ongoing relationship between the Toms River Ramada Inn and her traffickers that

May 4, 2023
Page 3
_____

involved far more than an isolated and anonymous business transaction. She alleges that traffickers (including her own) continued returning to the Toms River Ramada Inn because they could engage in trafficking with low risk of interference. (ECF No. 1 at ¶ 37).  Nonetheless, even if the Court determines an overt act is required, Ramada Defendants acted overtly, including by continuously accepting benefits from the trafficking venture and actively choosing to disregard the unlawful activity openly occurring on their premises.

Ramada Defendants also argue that an "ordinary franchise agreement" does not establish that they, directly, participated in any venture. This argument ignores P.B.'s allegations about the direct role that Ramada Defendants played in hotel operations related to P.B.'s trafficking, such as: (1) exercising control over reservation and payment systems; (2) setting policies on how guests check in and how they pay for rooms; (3) training hotel staff on how to recognize signs of trafficking and how to respond; and (4) setting policies on how to detect and respond to signs of trafficking. (*Id.* at ¶¶ 51-68). In exercising this retained control, Ramada Defendants actively contributed to an environment where trafficking thrived. (*Id.* at ¶¶ 37-40, 42-44). As one example, if Ramada Defendants would have adopted and enforced reasonable and appropriate policies regarding use of identification and payment methods, P.B.'s trafficker would not have been able to use the Toms River Ramada Inn to sexually exploit her without detection.

<u>Vicarious Liability</u>
P.B. also plausibly alleges that Ramada Defendants are liable for the TVPRA violations of the franchisees, who acted as their agents when facilitating sex trafficking at the Toms River Ramada Inn. (ECF No. 1 at ¶¶ 66-68). Ramada Defendants assert that liability based on actual agency is not available under the TVPRA, but courts have widely rejected similar arguments. *See, e.g.*, *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 U.S. Dist. LEXIS 201073, at *22 (N.D. Cal. 2020) (collecting decisions). Ramada Defendants also argue, alternatively, that P.B.'s allegations are insufficient to plead actual agency. Not so. Under federal common law, allegations like those made by P.B. have repeatedly been found sufficient to plead actual agency. *See, e.g.*, *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19cv120, 2020 U.S. Dist. LEXIS 250670, at *12 (E.D. Va. 2020). P.B. alleges that Ramada Defendants jointly, exercised systemic control over the means and methods of operation of their franchisees. (ECF No. 1 at ¶54-68).  Importantly, P.B. alleges that Ramada Defendants controlled the specific means and methods that caused her harm. *See J.C*, 2020 U.S. Dist. LEXIS 201073, at *22. This is sufficient to plead actual agency.

<u>Conclusion</u>
Ramada Defendant's requested motion would only unnecessarily tax the resources of the parties and the Court.  Jane Doe (P.B.) respectfully requests the untimely motion for leave be denied and Ramada Defendants be ordered to answer. Undersigned counsel looks forward to moving this matter to resolution and will make ourselves available at the Court's request.

Very truly yours,
LOCKS LAW FIRM LLC

*Jennifer Emmons*

JLE/hd                                Jennifer L. Emmons

cc: Counsel of record via ECF

PHILADELPHIA, PA    STATE COLLEGE, PA    NEW YORK, NY    CHERRY HILL, NJ    ROSELAND, NJ