<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JANE DOE (P.B.),<br><br>                 Plaintiff,<br><br>       v.<br><br>WYNDHAM HOTELS & RESORTS, INC.<br>D/B/A RAMADA INN, *et al.*,<br><br>                 Defendants. | Civil Action No. 23-1493 (ZNQ) (RLS)<br><br>**MEMORANDUM OPINION** |

<u>**QURAISHI, District Judge**</u>

      **THIS MATTER** comes before the Court upon two Motions to Dismiss. The first Motion to Dismiss was filed by Defendants Wyndham Hotels & Resorts, Inc. ("WRHI") and Ramada Worldwide Inc. ("RWI", collectively with WRHI "Franchisors"). ("Franchisor Motion", ECF No. 42).[1] Franchisors filed a brief in support of their Motion. ("Franchisors Brief", ECF No. 16-1.) Plaintiff Jane Doe P.B. ("Jane Doe") opposed ("Opp. to Franchisors", ECF Nos. 23, 43) and Franchisors replied ("Franchisors Reply", ECF Nos. 44, 30).

---

[1] Defendant Franchisors' prior Motion (ECF No. 16) was inadvertently re-listed as an active motion. Franchisors' pending motion is correctly identified. As such, their earlier motion will be denied as moot.

Defendant Dorca Co. Inc. ("Dorca") also seeks to dismiss the claims against it. ("Dorca Motion", ECF No. 28[2]). Dorca adopted a brief in support of its Motion. ("Dorca Brief", ECF No. 28-1.). Plaintiff opposed ("Opp. to Dorca", ECF No. 38) and Dorca replied ("Dorca Reply", ECF No. 40.) After careful consideration of the parties' submissions, the Court decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons outlined below, the Defendant Dorca's Motion to Dismiss will be DENIED and Defendant Franchisors' Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

### A. Factual Background[3]

Jane Doe is a New Jersey resident who became addicted to pain killers because of medical complications. (First Amended Complaint "FAC", ECF No. 41. ¶¶ 20–22.) She was forced into sex trafficking in 2015. Plaintiff's Complaint outlines the prevalent use of hotels in sex trafficking generally. More specifically, it also discusses instances of sex trafficking on other properties of Defendant Franchisors. (*Id.* ¶¶ 25–33.) Her traffickers would provide or withhold access to drugs and basic necessities, conditioned on her making money through the sale of sex. Physical force was used against her, with threats to her or her family's safety. While the period she was trafficked spanned at least 2015–2017, Plaintiff is only able to provide the dates of March 15, 2016 through March 16, 2016 due to her intoxication from being kept on drugs. (*Id.*)

---

[2] More accurately, the second Motion to Dismiss (ECF No. 28) was filed by then-defendants CT-CT07 Mazel, LLC and DT-DT07 Mazel, LLC. That motion sought to dismiss the claims against the movants or to join Dorca as a necessary party. Plaintiff then moved to amend her complaint to withdraw her claims as to CT-CT07 Mazel, LLC and DT-DT07 Mazel, LLC and to add Dorca. (ECF No. 35.) The Court granted her motion as unopposed (ECF No. 39), and Plaintiff duly filed the First Amended Complaint (ECF No. 41). In the meantime, counsel for Dorca—who had previously represented CT-CT07 Mazel, LLC and DT-DT07 Mazel, LLC—filed a reply in further support of the Motion to Dismiss already filed by CT-CT07 Mazel, LLC and DT-DT07 Mazel, LLC., effectively adopting their Motion. (ECF No. 40.)

[3] Omitted from this background summary is the substantial portion of Plaintiff's Complaint that generally discusses sex trafficking in the United States and recounts instances reported in the news of sex trafficking taking place on various Ramada Inn properties across the country. (Am. Compl. ¶¶ 25–31.)

According to the Amended Complaint, it was clear to Defendants that Plaintiff was being trafficked on those dates (and others from 2015–2017) at a Ramada Inn in Toms River. Signs of her trafficking included: her traffickers' use of her identification to secure a hotel room; her disheveled, unkempt appearance and her clothing that was inappropriate for her age and the circumstances; excessive foot traffic at unusual hours in and out of her hotel room by male visitors who were not hotel guests. *(Id.* ¶¶ 40–42.) The Amended Complaint alleges that multiple hotel employees observed these signs, interacted with the traffickers, and even accepted bribes to ignore what was occurring. (*Id.* ¶¶ 43–45.)

The Complaint also alleges that, as a franchisor, RWI requires its franchisees to adhere to consistent standards. RWI generates revenue from each room rented from their franchisees, conducts periodic on-site inspections to ensure uniformity of standards, and exerts control over business decisions. These decisions include which types of payments are allowed, setting employee wages, and standardizing training methods, among other means of control. (*Id.* ¶¶ 58–63.)

B. Procedural Background

On March 17, 2023, Jane Doe filed a Complaint ("Complaint", ECF No. 1) alleging various violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C § 1581, *et seq.* (Compl. ¶¶ 2–4, ECF No. 1). She has since amended her Complaint. (First Amended Complaint "FAC", ECF No. 41.) Defendants responded with the current Motions to Dismiss.

II. **JURISDICTION**

This Court has subject matter jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. § 1331.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2)[4] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[4] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

### IV. DISCUSSION

As set forth above, the FAC asserts claims against both Dorca and Franchisors for claims under 18 U.S.C. § 1595(a). Dorca seeks dismissal of all the claims asserted against it. Defendant Franchisors also seek dismissal of the same claims.

#### A. DORCA'S MOTION TO DISMISS

Dorca first argues that because Plaintiff admits she can only identify two dates she stayed at the hotel, she cannot plausibly allege facts beyond those dates. (Dorca Brief at 8.) In particular, Dorca contends she cannot plausibly make general allegations like "[d]espite the obvious signs of sex trafficking at the subject Ramada Inn, Jane Doe's trafficker was allowed to continue to use the property as a venue for Jane Doe's violent sexual exploitation and trafficking" or that her "trafficker would frequently use Jane Doe's identification card to secure hotels rooms." (*Id*.) Likewise, Dorca contends that the Court should reject as merely unsupported speculation (and therefore not plausibly pled) the Complaint's allegations that "[s]ome individuals associated with the subject Ramada Inn" "accepted tips to [look the other way from sex trafficking]" (Compl. ¶ 37) or that "individuals entered and left [the hotel] at unusual hours and were present at the hotel for brief periods of time" (*Id*. ¶ 44). (Dorca Brief at 8–9.)

The Court finds this argument unpersuasive. The Amended Complaint alleges more than merely two dates. It asserts that Plaintiff's trafficking period included, but was not limited to, 2015 through 2017. (Am. Comp. ¶ 21.) It then alleges that "on several instances during this time period, at a minimum, Jane Doe was trafficked at [the hotel]."[5] (*Id*.) The Amended Complaint has therefore alleged a defined and extended period, one that encompasses the two dates she can specifically identify. Her inability to identify more than those two specific dates does not, as Dorca argues, preclude her

---

[5] The Court is mindful that Dorca is most likely the party in the best position to identify further dates Plaintiff stayed at the hotel in discovery, once it has the opportunity to search her name, her traffickers' names, and any aliases she can provide.

from pleading plausible allegations as to the defined and extended period. The Court therefore declines Dorca's invitation to ignore as "contradictory" such allegations.[6]

## B. FRANCHISORS' MOTION TO DISMISS

Franchisors move to dismiss based, inter alia, on grounds that the Amended Complaint fails to plausibly allege their knowledge of the circumstances surrounding Plaintiff's trafficking. They cite a series of district court decisions outside this Circuit that have dismissed beneficiary claims like this one against hotel brand franchisors for failing to allege that the franchisor knew or should have known about the plaintiff's trafficking.

In relevant part, the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C § 1581 authorizes a civil remedy to victims of certain types of human trafficking. The civil remedy portion of the Act provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). The phrase "a violation of this chapter" refers to Chapter 77 of Title 18 of the United States Code. The violation of Chapter 77 relevant to this case is contained in 18 U.S.C. § 1591(a), which provides in relevant part:

(a) Whoever knowingly –

---

[6] Given the Court's rejection of Dorca's attempt to discredit the Amended Complaint's broader allegations as to knowledge/participation of the hotel staff, it does not reach Dorca's subsequent theory that in the absence of those allegations, Plaintiff has failed to allege the required TVPRA element that Dorca "participated in the venture." (*See* Dorca Motion at 9–18.) In other words, the Court finds that the Amended Complaint does in fact plausibly plead that hotel staff "participated in a venture" insofar as it pleads facts that they knew or should have known Plaintiff was being trafficked.

> (1) in or affecting interstate or foreign commerce ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

To state a section 1595(a) claim, a plaintiff must plausibly allege that she was a victim of a criminal offense under section 1591(a), and then must plausibly allege that the defendant (1) "knowingly benefit[ted] financially or by receiving anything of value," (2) from participation in a venture, (3) which defendant "knew or should have known has engaged in" sex trafficking under section 1591(a). *S.Y. v. Naples Hotel Company*, 476 F. Supp. 3d 1251 at 1255–56 (citing *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020)). With respect to the third element, a defendant must have had either actual or constructive knowledge that the venture was in violation of the TVPRA *as to the plaintiff* to make out a TVPRA claim. *See Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) (emphasis added). General awareness that sex trafficking has occurred at a franchisee's properties does not reach the level of "should have known." *S.J v. Choice Hotels Int'l Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020).

The Court has carefully reviewed the Amended Complaint. In relevant part, Plaintiff generally alleges that sex slavery is pervasive in the United States and cites several publications to the effect that it takes place largely in hotels. (Am. Compl. ¶¶ 25–28.) She alleges more specifically that Ramada properties have been involved, and she cites publications identifying

various criminal cases at their properties. (Am. Compl. ¶ 29.)[7] Finally, she alleges that Franchisors knew or should have known that their franchised properties were being used for sex trafficking based on online reviews posted to tripadvisor.com by other hotel guests opining that prostitution was taking place onsite. (Am. Compl. ¶¶ 29–32.)

Notwithstanding the abundance of support that the Amended Complaint presents for the proposition that sex trafficking is a serious problem afflicting this country and that it is taking place largely at hotels, the Court is constrained to find that the Amended Complaint has not plausibly pled that Franchisors had either actual or constructive knowledge of Plaintiff's particular trafficking, an explicit requirement under the TVPRA.[8] On this ground alone, the Court finds that her claim against Franchisors must be dismissed without prejudice.[9]

At points, the Amended Complaint alleges that Franchisors are vicariously liable for Dorca's conduct despite having not themselves violated the TVPRA. Franchisors argue that the Complaint fails to cite any specific instances in which WHRI or RWI exercised control over their franchisee hotels that would support a finding of an agency relationship.

The Complaint identifies ways in which Franchisors exerted control over Dorca, such as managing the hotel's reservation systems and dictating which types of payment types were permitted. (Am. Compl ¶¶ 42, 54, 57.) The Complaint also alleges authority Franchisors wielded over day-to-day operation of the hotel at which Jane Doe was trafficked. (*Id.* ¶¶ 52, 66–68.)

---

[7] In summary fashion, paragraph 57 of the Amended Complaint alleges that "[b]ased upon public reporting, investigations, criminal incidents, hotel reviews and comments, and direct reporting from Dorca [as] set out above, Wyndham and Ramada Franchising had actual knowledge of pervasive and continuous sex trafficking throughout the hotel industry, its franchised and owned hotel properties and the subject Ramada Inn. They knowingly chose to facilitate sex trafficking at its locations including the subject Ramada Inn and benefit from its participation in a sex trafficking venture." Notably, however, the Amended Complaint fails to identify or describe the "direct reporting from Dorca" that it refers to.

[8] Because the Court find that this third essential element of a TVPRA claim is not present, it does not reach the parties' arguments as to the other elements.

[9] Obviously, should discovery yield evidence that Franchisors knew or should have known of Plaintiff's trafficking, she may seek to re-add them as defendants at a later time.

An agency relationship exists where the principal manifests assent to the agent that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent. Restatement (Third) of Agency § 1.01 (2006).  The Third Circuit has noted the difficulties of applying traditional principles of agency to the relationship between a franchisor and franchisee. *See Drexel v. Union Prescription Venters, Inc.*, 582 F.2d 781, 786 (3d Cir. 1978). While some degree of control is inherent in the franchisor-franchisee relationship, "the mere existence of a franchise relationship does not necessarily trigger a master-servant relationship, nor does it automatically insulate the parties from such a relationship." *Id*. The question of whether a franchisor has retained sufficient control to establish an agency relationship depends entirely on the facts of each individual case, including the extent of the control as defined by the franchise agreement, and the actual practice of the parties.  The hallmark of an agency relationship is that the principal has the right to control the manner in which the agent performs his duties.  *Drexel*, 582 F.2d at 785.

In relevant part, the Amended Complaint alleges that Franchisors "retained control, or the right to control the mode and manner of the work contracted" because they "shared profits, employee training, standardized and strict rules of operations, they controlled pricing and reservations, regularly conducted inspections, and other acts described above.  Finally, [Franchisors] had the right to terminate the franchise agreement with Dorca if Dorca failed to comply with the requirements promulgated by [Franchisors]." (Am. Compl. ¶ 79.)  The Court's consideration is facilitated by the fact that these allegations are substantially similar to those found by the Third Circuit in *A.B.* to be sufficient to survive a similar motion to dismiss from the defendant franchisor under comparable Pennsylvania law.  455 F. Supp. 3d at 196 (affirming denial of dismissal and noting that "[t]he evidence may ultimately prove Marriott does not exercise day-

to-day control over its Philadelphia Airport hotels, but this is more properly raised after discovery.")  Consistent with this guidance from the Third Circuit, the Court finds that the Amended Complaint plausibly alleges a principal-agent relationship between Franchisors and Dorca with the understanding that discovery may ultimately reveal that Franchisors do not in fact exercise sufficient control over the day-to-day operations of Dorca.  Accordingly, the portion of Franchisors' Motion seeking to dismiss claim for vicarious liability will be DENIED.

## V.     CONCLUSION

For the reasons outlined above, WRHI and RWI's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART and Dorca's Motion to Dismiss will be DENIED.[10]  Plaintiff will be given 30 days to either file a Second Amended Complaint or indicate that she intends to proceed based on the current, Amended Complaint.  An appropriate Order will follow.

Date: December 26, 2023

s/Zahid N. Quraishi<br>
ZAHID N. QURAISHI<br>
UNITED STATES DISTRICT JUDGE

---

[10] To the extent Plaintiff seeks to amend her complaint, she is instructed to plead her claims as separate counts with supporting allegations.  Generally speaking, group pleading as presented in the Amended Complaint are insufficient to sustain a claim as a matter of law.  *Pushkin v. Nussbaum*, Civ. No. 12-324, 2017 WL 1591863, at *7 (D.N.J. Apr. 28, 2017) ("[G]roup pleading is impermissible.")  More specifically, courts in this district consistently hold that group pleading does not satisfy the plausibility requirement of Rule 8.  *See, e.g., Sheeran v. Blyth Shipholding S.A.*, Civ. No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (explaining that group pleading fails to put defendants on notice of the claims against them); *Dante v. Schwartz*, Civ. No. 20-1047, 2022 WL 1104996, at *3 (D.N.J. Apr. 13, 2022) ("Group pleading fails to meet the plausibility requirement"); *Frazier v. Kuhn*, Civ. No. 22-2781, 2022 WL 2235884, at *7 (D.N.J. June 22, 2022) (pleading that all defendants committed a single violation does "not satisfy the plausibility standard"). Failure to identify each defendant's role for the alleged wrong is insufficient. *Pushkin*, 2017 WL 1591863, at *7.